TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
        1100/1300 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-6527/2424/3819
        Facsimile: (213) 894-6269/0141
        E-mail:    Scott.Paetty@usdoj.gov
                   Catherine.S.Ahn@usdoj.gov
                   Brian.Faerstein@usdoj.gov

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
        1400 New York Avenue NW, 3rd Floor
        Washington, DC 20530
        Telephone: (202) 320-0539
        Facsimile: (202) 514-0152
        E-mail:    Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-579(A)-SVW |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT MANUK GRIGORYAN |
| v. | |
| RICHARD AYVAZYAN,<br> aka "Richard Avazian" and<br> "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br> aka "Marietta Abelian" and<br> "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br> aka "Arthur Ayvazyan," and<br>TAMARA DADYAN,<br>MANUK GRIGORYAN,<br> aka "Mike Grigoryan," and | |

```
        "Anton Kudiumov,"
ARMAN HAYRAPETYAN,
EDVARD PARONYAN,
   aka "Edvard Paronian" and
        "Edward Paronyan," and
VAHE DADYAN,

Defendants,

            Defendant.
```

1.   This constitutes the plea agreement between defendant MANUK GRIGORYAN ("defendant") and the United States Attorney's Office for the Central District of California and the United States Department of Justice, Criminal Division, Fraud Section (collectively referred to herein as the "United States"), in the above-captioned case.   This agreement is limited to the United States and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the United States and provided by the Court, appear and plead guilty to counts nineteen and twenty-three of the first superseding indictment in United States v. Richard Ayvazyan et al., CR No. 20-579(A), which charge defendant with bank fraud, in violation of 18 U.S.C. § 1344(2), and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

b.   Agree that all court appearances, except his sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by Order of the Chief Judge 20-097 or

2

another order, rule, or statute.  Defendant understands that, under the United States Constitution, the United States Code, and the Federal Rules of Criminal Procedure (including Rules 11 and 43), he may have the right to be physically present at these hearings. Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely.  Defense counsel also joins in this consent, agreement, and waiver. Specifically, this agreement includes, but is not limited to, the following:

      i.  Defendant consents under Federal Rules of Criminal Procedure 5(f) and 10(c) and Section 15002(b) of the CARES Act to proceed with his initial appearance and arraignment by VTC or telephone, if VTC is not reasonably available.

      ii.  Defendant consents under Section 15002(b) of the CARES Act to proceed with his waiver of indictment, under Federal Rule of Criminal Procedure 7(b), by VTC or telephone, if VTC is not reasonably available.

      iii. Defendant consents under Section 15002(b) of the CARES Act to proceed with his change of plea hearing by VTC or telephone, if VTC is not reasonably available.

      iv.  Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pretrial release by VTC or telephone, if VTC is not reasonably available.

      c.  Not contest facts agreed to in this agreement.

      d.  Abide by all agreements regarding sentencing contained in this agreement.

1   e. Appear for all court appearances, surrender as ordered

2 for service of sentence, obey all conditions of any bond, and obey

3 any other ongoing court order in this matter.

4   f. Not commit any crime; however, offenses that would be

5 excluded for sentencing purposes under United States Sentencing

6 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

7 within the scope of this agreement.

8   g. Be truthful at all times with the United States

9 Probation and Pretrial Services Office and the Court.

10   h. Pay the applicable special assessments at or before

11 the time of sentencing unless defendant has demonstrated a lack of

12 ability to pay such assessments.

13   i. At or before the time of sentencing, satisfy any and

14 all restitution/fine obligations based on ability to pay by

15 delivering a certified check or money order to the Fiscal Clerk of

16 the Court in the amount of $3,398,282, to be held until the date of

17 sentencing and, thereafter, applied to satisfy defendant's

18 restitution/fine balance.  Payments may be made to the Clerk, United

19 States District Court, Fiscal Department, 255 East Temple Street,

20 11th Floor, Los Angeles, California 90012.

21   j. Ability to pay shall be assessed based on the

22 Financial Disclosure Statement, referenced below, and all other

23 relevant information relating to ability to pay.

24   k. Defendant agrees that any and all restitution/fine

25 obligations ordered by the Court will be due in full and immediately.

26 The government is not precluded from pursuing, in excess of any

27 payment schedule set by the Court, any and all available remedies by

28

which to satisfy defendant's payment of the full financial

obligation, including referral to the Treasury Offset Program.

l.    Complete the Financial Disclosure Statement on a form

provided by the United States and, within 30 days of defendant's

entry of a guilty plea, deliver the signed and dated statement, along

with all of the documents requested therein, to the United States by

either email at usacac.FinLit@usdoj.gov (preferred) or mail to the

United States Financial Litigation Section at 300 N. Los Angeles St.,

Suite 7516, Los Angeles, CA 90012.

m.    Authorize the United States to obtain a credit report

upon returning a signed copy of this plea agreement.

n.    Consent to the United States inspecting and copying

all of defendant's financial documents and financial information held

by the United States Probation and Pretrial Services Office.

3.    Defendant further agrees:

a.    To forfeit all right, title, and interest in and to

any and all monies, properties, and/or assets of any kind, derived

from or acquired as a result of the illegal activity to which

defendant is pleading guilty (collectively, the "Forfeitable

Assets").

b.    To the Court's entry of an order of forfeiture at or

before sentencing with respect to the Forfeitable Assets and to the

forfeiture of the assets.

c.    To take whatever steps are necessary to pass to the

United States clear title to the Forfeitable Assets, including,

without limitation, the execution of a consent decree of forfeiture

and the completing of any other legal documents required for the transfer of title to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f.   Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.   To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.   To fill out and deliver to the United States a completed financial statement listing defendant's assets on a form provided by the United States.

i.   That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

<u>THE UNITED STATES' OBLIGATIONS</u>

4.   The United States agrees to:

a.   Not contest facts agreed to in this agreement.

6

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss the remaining counts of the first superseding indictment and the underlying indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.    Not seek a sentence of imprisonment above the high end of, and make no recommendation as to the point within the applicable Sentencing Guidelines range at which a term of imprisonment should be selected, provided that the offense level used by the Court to determine that range is 24 or higher.  For purposes of this agreement, the high end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

<u>NATURE OF THE OFFENSES</u>

5.    Defendant understands that for defendant to be guilty of the crime charged in count nineteen of the first superseding indictment, that is, bank fraud, in violation of 18 U.S.C. § 1344(2), the following must be true: (1) defendant knowingly carried out a

7

scheme or plan to obtain money or property from a financial institution by making false statements or promises; (2) defendant knew that the statements or promises were false; (3) the statements or promises were material, that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property; (4) defendant acted with the intent to defraud; and (5) the financial institution was federally insured.

6.   Defendant understands that for defendant to be guilty of the crime charged in count twenty-three of the first superseding indictment, that is, aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), the following must be true:  (1) defendant knowingly possessed without legal authority a means of identification of another person; (2) defendant knew that the means of identification belonged to a real person; and (3) defendant did so during and in relation to bank fraud, in violation of 18 U.S.C. § 1344(2), as charged in count nineteen of the first superseding indictment.  The government need not establish that the means of identification of another person was stolen.

<u>PENALTIES AND RESTITUTION</u>

7.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1344(2), as charged in count nineteen is: 30 years' imprisonment; a five-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1028A(a)(1), as charged in count twenty-three of the first superseding indictment, is: two years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9.    Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 18, United States Code, Section 1028A(a)(1), as charged in count twenty-three of the first superseding indictment, is a two-year term of imprisonment, which must run consecutive to any other sentence of imprisonment, and a mandatory special assessment of $100.[1]

10.    Defendant understands, therefore, that the total maximum sentence for both offenses to which defendant is pleading guilty is: 32 years' imprisonment; a five-year period of supervised release; a fine of $1,250,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

11.    Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the United States' compliance with its obligations under this

---

[1] Defendant understands that there is case law suggesting that the term of supervised release on count twenty-three could be imposed to run consecutively to the term of supervised release imposed on the count nineteen.  While the USAO does not intend to seek a consecutive term of supervised release, defendant understands that if the Court were to impose a consecutive term of supervised release, the maximum term of supervised release for both of the counts of conviction would be eight years, rather than five years as stated in the text above.

agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed and charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges.  The parties currently believe that the applicable amount of restitution is approximately $3,398,282, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

12.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant

understands that he is pleading guilty to felonies and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

14.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney and the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

1

FACTUAL BASIS

2      15.  Defendant admits that defendant is, in fact, guilty of the

3  offenses to which defendant is agreeing to plead guilty.  Defendant

4  and the United States agree to the statement of facts provided below

5  and agree that this statement of facts is sufficient to support pleas

6  of guilty to the charges described in this agreement and to establish

7  the Sentencing Guidelines factors set forth in paragraph 17 below but

8  is not meant to be a complete recitation of all facts relevant to the

9  underlying criminal conduct or all facts known to either party that

10 relate to that conduct.

11      Defendant fraudulently obtained federal disaster relief funds

12 distributed through the Paycheck Protection Program ("PPP") and the

13 Economic Injury Disaster Loan Program ("EIDL").  Established by The

14 Coronavirus Aid, Relief, and Economic Security ("CARES") Act, a

15 federal law enacted in March 2020, the PPP and EIDL programs provided

16 emergency financial assistance to Americans suffering economic harm

17 as a result of the COVID-19 pandemic.  PPP loans were obtained by

18 submitting applications to participating financial institutions,

19 which administered the loans.  EIDL loans were obtained by submitting

20 applications to the United States Small Business Administration

21 ("SBA"), which disbursed the loans through financial institutions.

22 The PPP and EIDL programs were funded by U.S. taxpayers.

23      As part of a scheme to fraudulently obtain EIDL and PPP loan

24 proceeds, between in or about March 2020 and continuing through in or

25 about August 2020, defendant submitted PPP and EIDL loan applications

26 for businesses that defendant knew did not have actual operations and

27 named, as the owner of the businesses, individuals who defendant knew

28

12

were not the owners of the purported businesses.  In furtherance of
the scheme, and at co-defendant Richard Ayvazyan's direction,
defendant maintained an apartment located on Canoga Avenue in
Woodland Hills, California (the "Canoga Apartment"), which defendant
knew would be fraudulently listed on the loan applications as the
purported address of the individuals falsely identified as the owners
of the businesses applying for the PPP and EIDL loans.  In or about
May 2020, defendant added the name "Viktoria Kauichko" to the lease
for the Canoga Apartment.  When he did so, defendant knew "Viktoria
Kauichko" was a synthetic identity – that is, an identity made up of
a combination of real and fake information.  Defendant collected
mail, including any mail addressed to "Viktoria Kauichko" and the
other names identified as the business owners on the fraudulent PPP
and EIDL loan applications, from the Canoga Apartment at co-defendant
Richard Ayvazyan's direction.

On or about June 25, 2020, defendant, knowingly and with the
intent to defraud, submitted a fraudulent PPP application to Lender
B, i.e., Celtic Bank, on behalf of "Redline Auto Mechanics" (the
"Redline Auto Mechanics PPP Loan Application").  Celtic Bank was a
financial institution the deposits of which were insured by the
Federal Deposit Insurance Company.  The Redline Auto Mechanics PPP
Loan Application contained false statements.  For example, it falsely
identified "Anton Kudiumov" as the owner of Redline Auto Mechanics
and provided the Canoga Apartment as the address of "Anton Kudimov".
Defendant knew that the name "Anton Kudiumov" was a synthetic
identity and that the Canoga Apartment was not the address of "Anton
Kudimov."  The Redline Auto Mechanics PPP Loan Application that

defendant submitted to Celtic Bank also included: a fake driver's license bearing the name "Anton Kudiumov" that identified the Canoga Apartment as "Anton Kudimov"'s address; a fake payroll report purportedly from payroll service provider Gusto; and a fake IRS Form 940 for 2019 (i.e., a purported employer's annual federal tax return) that falsely represented that it had been prepared by A.F., a professional tax preparer.  By causing the submission of this fake IRS Form 940 to Celtic Bank, defendant knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, a means of identification, specifically, the name of A.F., during and in relation to his commission of the bank fraud scheme.  Defendant knew that A.F. was a real person.

On or about June 29, 2020, in reliance on the false and fraudulent Redline Auto Mechanics PPP Loan Application submitted by defendant, Celtic Bank wired approximately $276,600 in fraudulently-obtained PPP loan proceeds to the Redline Auto Mechanics Bank 2 Account, a Bank of America account controlled by defendant using the alias "Anton Kudiumov."

Defendant also used the name "Artashes Grigoryan" to submit fraudulent PPP and EIDL loan applications.  On or about April 8, 2020, defendant, knowingly and with the intent to defraud, submitted to the SBA an application for an EIDL loan in the amount of $150,000 on behalf of "G&A Diamonds," which identified "Artashes Grigoryan" as the owner of G&A Diamonds (the "G&A Diamonds EIDL Application").  The G&A Diamonds EIDL Application included the following false representations and certifications: (a) that G&A Diamonds had 5

employees, including employees for whom it had paid wages and payroll taxes; and (b) that G&A Diamonds would use the loan proceeds for permissible business purposes.  In fact, G&A Diamonds had no employees and the loan proceeds were used for impermissible non-business purposes.  On or about June 16, 2020, in reliance on defendant's false representations in the G&A Diamonds EIDL Application, the SBA wired $149,900 to a G&A Diamonds account at U.S. Bank.

Defendant also submitted fraudulent EIDL and PPP loan applications to federally insured financial institutions and the SBA using the name "Anna Manukyan."  Defendant agrees that these fraudulent applications, which caused a total intended loss of $3,398,282, as described in the table below, were all part of the same course of conduct and common scheme and plan as the bank fraud charged in count nineteen.

//
//
//
//
//
//
//
//
//
//
//
//

15

| Company | Applicant | Amount | Lender | Status | Advance |
|---|---|---|---|---|---|
| Fadehaus Barbershop | Anton Kudiumov | $ 150,000 | SBA | Disbursed | $ 10,000 |
| Fadehaus Barbershop | Anton Kudiumov | $ 182,637 | WebBank | Cancelled | |
| Nelson's Nursery | Anton Kudiumov | $ 49,000 | SBA | Disbursed | $ 7,000 |
| Redline Auto Mechanics | Anton Kudiumov | $ 150,000 | SBA | Disbursed | $ 7,000 |
| Redline Auto Mechanics Inc. | Anton Kudiumov | $ 276,600 | Celtic Bank | Disbursed | |
| TM Events Inc. | Anton Kudiumov | $ 276,600 | Newtek | Disbursed | |
| TM Events Inc. | Anton Kudiumov | $ 150,000 | SBA | Disbursed | $ 7,000 |
| Manukyan Construction | Anna Manukyan | $ 131,195 | Cross River Bank | Disbursed | |
| Manukyan Construction | Anna Manukyan | $ 131,195 | Celtic Bank | Cancelled | |
| G&A Diamonds | Artashes Grigoryan | $ 145,000 | SBA | Disbursed | |
| G&A Diamonds | Artashes Grigoryan | $ 113,750 | Cross River Bank | Disbursed | |
| Apex Health and Safety Consultants | Anna Manukyan | $ 150,000 | SBA | Funded | $ 10,000 |
| Greenshop Hydro Inc | Anna Manukyan | $ 150,000 | SBA | Funded | $ 10,000 |
| Manukyan Construction | Anna Manukyan | $ 150,000 | SBA | Funded | $ 10,000 |
| Runyan Tax Service, Inc | Viktoria Kauichko | $ 276,653 | Seattle Bank | Disbursed | |
| Journeymen Construction | Viktoria Kauichko | $ 150,000 | SBA | Disbursed | $ 8,000 |
| Fiber One Media, Inc. | Viktoria Kauichko | $ 150,000 | SBA | Disbursed | $ 10,000 |
| Fiber One Media, Inc. | Viktoria Kauichko | $ 276,652 | WebBank | Cancelled | |
| Fiber One Media, Inc. | Viktoria Kauichko | $ 130,000 | Celtic Bank | Cancelled | |
| Fiber One Media, Inc. | Viktoria Kauichko | $ 130,000 | Ready Capital | Disbursed | |

SENTENCING FACTORS

16.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated

16

Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

17. Defendant and the United States agree to the following Sentencing Guidelines factors apply to Count Nineteen:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a) |
| Specific Offense Characteristics | | |
| Loss $1.5M > $3.5M | +16 | U.S.S.G. § 2B1.1(b)(1)(F) |
| Sophisticated Means | +2 | U.S.S.G. § 2B1.1(b)(10) |

The United States will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 4 are met. Subject to paragraph 31 below, defendant and the United States agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed. Defendant agrees, however, that the United States would be free to seek the enhancement set forth in U.S.S.G. § 3C1.1 for obstruction of justice.

18. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19. Defendant and the United States reserve the right to argue for a sentence outside the sentencing range established by the

Sentencing Guidelines based on the factors set forth in 18 U.S.C.
§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

1

## WAIVER OF APPEAL OF CONVICTION

2      21.  Defendant understands that, with the exception of an appeal
3  based on a claim that defendant's guilty pleas were involuntary, by
4  pleading guilty defendant is waiving and giving up any right to
5  appeal defendant's convictions on the offenses to which defendant is
6  pleading guilty.  Defendant understands that this waiver includes,
7  but is not limited to, arguments that the statutes to which defendant
8  is pleading guilty are unconstitutional, and any and all claims that
9  the statement of facts provided herein is insufficient to support
10 defendant's pleas of guilty.

11     ## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

12     22.  Defendant agrees that, provided the Court, before the
13 imposition of the mandatory consecutive sentence of 24 months'
14 imprisonment on count twenty-three, imposes a term of imprisonment
15 within or below the range corresponding to an offense level of 24 and
16 the criminal history category calculated by the Court, defendant
17 gives up the right to appeal all of the following: (a) the procedures
18 and calculations used to determine and impose any portion of the
19 sentence; (b) the term of imprisonment imposed by the Court; (c) the
20 fine imposed by the Court, provided it is within the statutory
21 maximum; (d) to the extent permitted by law, the constitutionality or
22 legality of defendant's sentence, provided it is within the statutory
23 maximum; (e) the amount and terms of any restitution order, provided
24 it requires payment of no more than $3,398,282; (f) the term of
25 probation or supervised release imposed by the Court, provided it is
26 within the statutory maximum; and (g) any of the following conditions
27 of probation or supervised release imposed by the Court: the

28

conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

23.   The United States agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above, and (b) before imposition of the mandatory consecutive sentence of 24 months' on count twenty-three, the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 24 and the criminal history category calculated by the Court, the United States gives up its right to appeal any portion of the sentence, with the exception that the United States reserves the right to appeal the amount of restitution ordered if that amount is less than $3,398,282.

24.   Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

25.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing either or both of defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the United States will be relieved of all of its obligations under this agreement; and (b) should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

26.  Defendant agrees that if either count of conviction is vacated, reversed, or set aside, the United States may: (a) ask the Court to resentence defendant on the remaining count of conviction, with both the United States and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty pleas on the remaining count of conviction, with both the United States and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact.  Defendant agrees

21

that the choice among these three options rests in the exclusive discretion of the United States.

EFFECTIVE DATE OF AGREEMENT

27.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

28.  Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the United States may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the United States to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the United States in writing.  If the United States declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the United States will be relieved of all its obligations under this agreement.

29.  Following the Court's finding of a knowing breach of this agreement by defendant, should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

30.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the United States' sentencing recommendations or the parties' agreements to facts or sentencing factors.

31.   Defendant understands that both defendant and the United States are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements

relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 17 are consistent with the facts of this case.  While this paragraph permits both the United States and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the United States' obligations not to contest the facts agreed to in this agreement.

32.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

33.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the United States and defendant or defendant's attorney, and that no

24

1  additional promise, understanding, or agreement may be entered into

2  unless in a writing signed by all parties or on the record in court.

3  <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

4      34.  The parties agree that this agreement will be considered

5  part of the record of defendant's guilty plea hearing as if the

6  entire agreement had been read into the record of the proceeding.

7  AGREED AND ACCEPTED

8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
9  CALIFORNIA

10  TRACY L. WILKISON
    Acting United States Attorney

11

12

13  _____          June 7, 2021
    CATHERINE S. AHN                         _____
14  SCOTT PAETTY                             Date
    BRIAN FAERSTEIN
15  Assistant United States Attorneys

16  CHRISTOPHER FENTON
    Trial Attorney, DOJ Fraud Section
17

18

19  _____          06-07-21
    MANUK GRIGORYAN                          _____
20  Defendant                                Date

21

22

23  _____          6.7.2021
    JOHN HANUSZ                              _____
24  Attorney for Defendant MANUK             Date
    GRIGORYAN

25

26

27

28
                              25

1

<u>CERTIFICATION OF DEFENDANT</u>

2      I have read this agreement in its entirety.  I have had enough

3 time to review and consider this agreement, and I have carefully and

4 thoroughly discussed every part of it with my attorney.  I understand

5 the terms of this agreement, and I voluntarily agree to those terms.

6 I have discussed the evidence with my attorney, and my attorney has

7 advised me of my rights, of possible pretrial motions that might be

8 filed, of possible defenses that might be asserted either prior to or

9 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10 of relevant Sentencing Guidelines provisions, and of the consequences

11 of entering into this agreement.  No promises, inducements, or

12 representations of any kind have been made to me other than those

13 contained in this agreement.  No one has threatened or forced me in

14 any way to enter into this agreement.  I am satisfied with the

15 representation of my attorney in this matter, and I am pleading

16 guilty because I am guilty of the charges and wish to take advantage

17 of the promises set forth in this agreement, and not for any other

18 reason.

19

20

21 _____        _____
   MANUK GRIGORYAN                       06-07-21

21 MANUK GRIGORYAN                     Date

   Defendant

22

23

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

24      I am MANUK GRIGORYAN's attorney.  I have carefully and

25 thoroughly discussed every part of this agreement with my client.

26 Further, I have fully advised my client of his rights, of possible

27 pretrial motions that might be filed, of possible defenses that might

28

1   be asserted either prior to or at trial, of the sentencing factors

2   set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

3   provisions, and of the consequences of entering into this agreement.

4   To my knowledge: no promises, inducements, or representations of any

5   kind have been made to my client other than those contained in this

6   agreement; no one has threatened or forced my client in any way to

7   enter into this agreement; my client's decision to enter into this

8   agreement is an informed and voluntary one; and the factual basis set

9   forth in this agreement is sufficient to support my client's entry of

10  guilty pleas pursuant to this agreement.

11

12

                                                            6.7.2021

13  JOHN HANUSZ                                              Date
    Attorney for Defendant MANUK
14  GRIGORYAN

15

16

17

18

19

20

21

22

23

24

25

26

27

28