1  TRACY L. WILKISON
   Acting United States Attorney
2  SCOTT M. GARRINGER
   Assistant United States Attorney
3  Chief, Criminal Division
   SCOTT PAETTY (Cal. Bar No. 274719)
4  CATHERINE AHN (Cal. Bar No. 248286)
   BRIAN FAERSTEIN (Cal. Bar No. 274850)
5  Assistant United States Attorneys
   Major Frauds/Environmental and Community Safety Crimes Sections
6       1100/1300 United States Courthouse
        312 North Spring Street
7       Los Angeles, California 90012
        Telephone: (213) 894-6527/2424/3819
8       Facsimile: (213) 894-6269/0141
        E-mail:    Scott.Paetty@usdoj.gov
9                  Catherine.S.Ahn@usdoj.gov
                   Brian.Faerstein@usdoj.gov
10
   JOSEPH S. BEEMSTERBOER
11 Acting Chief, Fraud Section
   Criminal Division, U.S. Department of Justice
12 CHRISTOPHER FENTON
   Trial Attorney, Fraud Section
13 Criminal Division, U.S. Department of Justice
        1400 New York Avenue NW, 3rd Floor
14      Washington, DC 20530
        Telephone: (202) 320-0539
15      Facsimile: (202) 514-0152
        E-mail:   Christopher.Fenton@usdoj.gov
16
   Attorneys for Plaintiff
17 UNITED STATES OF AMERICA

18                 UNITED STATES DISTRICT COURT

19             FOR THE CENTRAL DISTRICT OF CALIFORNIA

20 UNITED STATES OF AMERICA,          No. CR 20-00579(A)-SVW-5

21          Plaintiff,                GOVERNMENT'S SENTENCING POSITION FOR
                                      DEFENDANT MANUK GRIGORYAN
22             v.
                                      Date:       October 25, 2021
23 MANUK GRIGORYAN,                   Time:       11:00 a.m.
     aka "Mike Grigoryan," and        Location:   Courtroom of the Hon.
24      "Anton Kudiumov,"                         Stephen V. Wilson

25          Defendant.

26

27      Plaintiff United States of America, by and through its counsel

28 of record, the Acting United States Attorney for the Central District

1  of California, Assistant United States Attorneys Scott Paetty,

2  Catherine Ahn, and Brian Faerstein, and Department of Justice Trial

3  Attorney Christopher Fenton, hereby files its sentencing position

4  regarding defendant Manuk Grigoryan.

5      The government's sentencing position is based upon the attached

6  memorandum of points and authorities, the presentence investigation

7  report, the files and records in this case, and any other evidence or

8  argument that the Court may wish to consider at the time of

9  sentencing.

10     The government reserves the right to file any supplemental

11  sentencing position(s) that may be necessary.

12   Dated: October 18, 2021          Respectfully submitted,

13                                    TRACY L. WILKISON
                                      Acting United States Attorney

14                                    SCOTT M. GARRINGER
                                      Assistant United States Attorney
15                                    Chief, Criminal Division

16                                          /s/
                                      _____
17                                    SCOTT PAETTY
                                      CATHERINE AHN
18                                    BRIAN FAERSTEIN
                                      Assistant United States Attorneys
19                                    CHRISTOPHER FENTON
                                      Department of Justice Trial Attorney
20
                                      Attorneys for Plaintiff
21                                    UNITED STATES OF AMERICA

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

TABLE OF CONTENTS...............................................i

TABLE OF AUTHORITIES...........................................ii

MEMORANDUM OF POINTS AND AUTHORITIES............................1

I.    INTRODUCTION.............................................1

II.   RELEVANT PROCEDURAL HISTORY.............................1

III.  DEFENDANT'S OFFENSE CONDUCT.............................2

IV.   ADVISORY SENTENCING GUIDELINES CALCULATION.............5

V.    SECTION 3553(a) FACTORS.................................6

VI.   GOVERNMENT'S SENTENCING RECOMMENDATION.................7

      A.    Term of Custody..................................7

            1.    Nature and Circumstances of the Offense and
                  History and Characteristics of the Defendant (18
                  U.S.C. § 3553(a)(1))........................7

            2.    Seriousness of the Offense, Respect for the Law,
                  and Just Punishment (18 U.S.C. § 3553(a)(2)(A)).....10

            3.    Affording Adequate Deterrence and Protecting the
                  Public from Further Crimes of the Defendant (18
                  U.S.C. § 3553(a)(2)(B) and (C))....................12

      B.    Supervised Release...............................13

      C.    Restitution, Fine, and Mandatory Special Assessment......14

VII.  CONCLUSION..............................................14

**TABLE OF AUTHORITIES**

**CASES**

Gall v. United States, 552 U.S. 38 (2007)............................6

Molina-Martinez v. United States, 136 S.Ct. 1338 (2016).............6

United States v. Carty, 520 F.3d 984 (9th Cir. 2008)................6

United States v. Rita, 551 U.S. 338 (2007).........................7

**STATUTES**

18 U.S.C. § 1028A(a)(1).............................................2

18 U.S.C. § 1344(2)................................................2

18 U.S.C. § 3553(a).............................................passim

**OTHER AUTHORITIES**

U.S.S.G. § 2B1.1(a)(1)..............................................6

U.S.S.G. § 2B1.1(b)(1)(I)...........................................6

U.S.S.G. § 2B1.1(b)(10)(C)..........................................6

U.S.S.G. § 2B1.6....................................................6

U.S.S.G. § 2S1.1(a)(2)..............................................6

U.S.S.G. § 3E1.1(a), (b)............................................6

U.S.S.G. § 5D1.3(b)................................................14

1                **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3          The government respectfully submits this sentencing memorandum

4    to advise the Court of its sentencing position regarding defendant

5    Manuk Grigoryan ("defendant"), who has pleaded guilty to bank fraud

6    and aggravated identity theft in connection with his role as part of

7    a massive fraud to profit from a national catastrophe at the expense

8    of his fellow citizens.  Consistent with the parties' plea agreement,

9    the government agrees with the United States Probation and Pretrial

10   Services Office's (the "USPO") calculation of the advisory Guidelines

11   range and submits that a sentence within that range is appropriate in

12   light of the sentencing factors under 18 U.S.C. § 3553(a).  The

13   government also agrees with the USPO's recommendation of four years

14   of supervised release, but recommends an additional condition

15   reasonably related to defendant's underlying offense conduct.  The

16   government takes no position on the imposition of a fine, but, for

17   the reasons explained in the government's response to the presentence

18   investigation report ("PSR") and additional information discussed

19   herein, the government submits that defendant should be ordered to

20   pay restitution in the amount of $2,684,798, not $2,602,798.

21   **II.   RELEVANT PROCEDURAL HISTORY**

22         On March 11, 2021, a grand jury returned a first superseding

23   indictment against defendant and seven codefendants, charging

24   defendant with conspiracy to commit wire fraud and bank fraud,

25   multiple counts of wire fraud and bank fraud, aggravated identity

26   theft, and conspiracy to commit money laundering.  (ECF 154.)  On

27   June 7, 2021, pursuant to a plea agreement with the government,

28   defendant pleaded guilty to one count of bank fraud (Count 19), in

1  violation of 18 U.S.C. § 1344(2), and one count of aggravated

2  identity theft (Count 23), in violation of 18 U.S.C. § 1028A(a)(1).

3  (ECF 436, 454.)

4      On September 20, 2021, the USPO filed its PSR in which it

5  calculated a total offense level of 22 (with respect to Count 19, the

6  bank fraud offense) and a Criminal History Category I, resulting in

7  an advisory Guidelines range of 41 to 51 months' imprisonment for

8  Count 19.  (ECF 974.)  Taking into account the 24-month mandatory

9  consecutive sentence for Count 23, the USPO thus calculated the

10 effective advisory Guideline range as 65 to 75 months' imprisonment.

11 The USPO recommends that defendant be sentenced to a term of 65

12 months in prison, four years of supervised release, no fine,

13 restitution of $2,602,798, and a $200 mandatory special assessment.

14 (ECF 973.)

15     The government agrees with the USPO's offense level and criminal

16 history calculations and the resulting effective advisory Guidelines

17 range of 65 to 75 months' imprisonment (which includes the mandatory

18 consecutive 24 months).  For the reasons described below, the

19 government believes that a custodial sentence within this range is

20 appropriate and that a variance below the Guidelines (as defendant

21 requests) is not warranted in this case.[1]  The government also

22 addresses the other components of defendant's sentence below.

23 **III. DEFENDANT'S OFFENSE CONDUCT**

24     Defendant was actively involved in numerous aspects of his and

25 his codefendants' fraudulent scheme to submit fraudulent Paycheck

26

27     [1] Consistent with its obligations under the parties' plea
   agreement, the government does not make a recommendation as to the
28 appropriate point within the applicable advisory Guidelines range.

2

1  Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL")

2  program loan applications from March 2020 through August 2020.  (PSR

3  ¶ 31.)

4      Defendant used or was associated with multiple synthetic or

5  stolen individual identities that were central to the fraudulent

6  scheme.  For example, defendant used the synthetic identity "Anton

7  Kudiumov" to submit seven separate PPP and EIDL loan applications on

8  behalf of four separate fictitious businesses or businesses defendant

9  knew not to have actual operations.  (Id. ¶ 37.)  For three of those

10  supposed business entities ("Fadehaus Barbershop," "Redline Auto

11  Mechanics," and "TM Events Inc."), defendant submitted or caused to

12  be submitted both a fraudulent PPP loan application to an

13  institutional lender and a fraudulent EIDL loan application to the

14  United States Small Business Administration (SBA), doubling down on

15  the fraud.  (Id.)

16      Defendant used other synthetic or misappropriated identities in

17  furtherance of the fraudulent scheme.  Defendant knowingly used the

18  synthetic identity "Viktoria Kauichko," among other things adding

19  this name to the lease of an apartment he rented on Canoga Avenue in

20  Woodland Hills in order to aid in the submission of additional

21  fraudulent loan applications that used this fraudulent applicant name

22  and purported address.  (Id. ¶ 32.)  At codefendant Richard

23  Ayvazyan's direction, defendant collected mail at the Canoga Avenue

24  apartment that was addressed to "Viktoria Kauickho" and other

25  purported names identified as business owners in connection with

26  fraudulent PPP/EIDL loan applications.  (Id. ¶ 32.)  The Kauichko

27  identity was used in six fraudulent PPP or EIDL loan applications,

28

3

1  including four separate loan applications submitted on behalf of the

2  purported company "Fiber One Media, Inc."  (Id. ¶ 37.)

3      Defendant also used the name "Anna Manukyan" to submit five

4  additional PPP or EIDL applications on behalf of three separate

5  purported businesses ("Manukyan Construction," "Apex Health and

6  Safety Consultants," and "Greenshop Hydro Inc.").  (Id.)  And

7  defendant went so far as to use his father's name, Artashes

8  Grigoryan, to submit two additional fraudulent PPP and EIDL loan

9  applications for the business G&A Diamonds, lying about the number of

10 employees the business had (it had none) and the intention to use the

11 loan proceeds for business purposes (they were not).  (Id. ¶¶ 34, 37,

12 71.)

13     In connection with the fraudulent PPP and EIDL loan applications

14 he submitted, defendant used and submitted numerous fraudulent

15 materials to further the scheme.  For example, as part of a PPP

16 application on behalf of the fictitious company "Redline Auto

17 Mechanics" for $276,600 (the basis for Count 19 to which defendant

18 pleaded guilty),[2] defendant submitted a copy of a fraudulent

19 California's driver's license in the name of the synthetic identity

20 "Anton Kudiumov" and the address of the Canoga Avenue apartment.

21 (Id. ¶ 35.)  Defendant also submitted a fake payroll report in

22 support of this loan application, using a form that fraudulently

23 purported to have been prepared by payroll service provider Gusto.

24

25     [2] According to defendant, he has been employed by Redline Auto
   Collision (as distinguished from Redline Auto Mechanics) in Sun
26 Valley, California since 2018.  (PSR ¶ 93.)  Redline Auto Collision
   is or was operated by codefendant Edvard Paronyan (id.), and was used
27 by defendant Paronyan to submit two separate fraudulent PPP and EIDL
   loan applications (see ECF 469 (Defendant Paronyan Plea Agreement)
28 ¶ 11).

1  (Id.)  Defendant further submitted a fake Internal Revenue Service

2  Form 940, which falsely listed an annual payroll amount for Redline

3  Auto Mechanics, a fictitious company with no actual operations.

4  (Id.)

5      In order to seek to further lend the appearance of legitimacy to

6  this fake tax document, the Form 940 listed an actual tax preparer,

7  victim A.F., as the preparer of the form, when in fact A.F. had no

8  idea his/her name and identifying information were being used.  (Id.)

9  Defendant knew A.F. was a real person and that defendant did not have

10 authority to use A.F.'s name.  (Id.)  Defendant's knowing possession,

11 use, and transfer of A.F.'s name without lawful authority in

12 connection with the Redline Auto Mechanics fraudulent PPP loan

13 submission (i.e., aggravated identity theft) forms the basis for the

14 24-month mandatory consecutive custodial sentence defendant faces in

15 this case.  (Id.)

16     In all, as part of the same course of conduct and common scheme

17 and plan as defendant's offenses of conviction, defendant submitted,

18 caused to be submitted, or was otherwise associated with twenty

19 fraudulent PPP/EIDL loan applications.  (Id. ¶ 37.)  These loan

20 applications collectively sought $3,405,282 in fraudulent proceeds

21 and caused the actual loss of $2,684,798 to victim lenders and the

22 SBA.[3]  (Id.; see also Appendix A.)

23 **IV.   ADVISORY SENTENCING GUIDELINES CALCULATION**

24     Applying the November 1, 2018 Sentencing Guidelines, and taking

25 into account relevant conduct, the USPO calculated defendant's total

26 _____

27 [3] For the reasons explained in section VI.C herein, the intended loss amount in the PSR should be corrected from $3,398,282 to $3,405,282, and the actual loss amount should be corrected from

28 $2,602,798 to $2,684,798.

5

1  offense level for Count 19 (bank fraud) as 22 based on the following

2  calculations:  base offense level of 7 under U.S.S.G. § 2B1.1(a)(1);

3  16 additional levels for an intended loss of $3,405,282 (greater than

4  $1,500,000 but less than $3,500,000) under U.S.S.G. § 2B1.1(b)(1)(I);

5  2 additional levels for the offense conduct involving sophisticated

6  means under U.S.S.G. § 2B1.1(b)(10)(C); and a 3-level reduction for

7  acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b).

8  (PSR ¶¶ 45-58.)  With respect to Count 23 (aggravated identity

9  theft), the USPO found that the mandatory consecutive 24-month

10 sentence applies by application of statute under U.S.S.G. § 2B1.6.

11 In addition, the USPO determined that defendant has zero criminal

12 history points, resulting in a Criminal History Category I.  (See id.

13 ¶¶ 61-65.)  With a total offense level of 22 (for Count 19) and a

14 Criminal History Category I, the resulting advisory Guidelines range

15 is 41 to 51 months' imprisonment for the bank fraud offense.

16 Accounting for the mandatory consecutive 24-month sentence for the

17 aggravated identity theft offense (Count 23), the effective advisory

18 Guidelines range is 65 to 75 months' imprisonment.

19 **V.   SECTION 3553(a) FACTORS**

20      The Court should impose a sentence sufficient, but not greater

21 than necessary, to reflect the purposes of sentencing identified in

22 18 U.S.C. § 3553(a).  United States v. Carty, 520 F.3d 984, 991 (9th

23 Cir. 2008).  The advisory Guidelines range provides the "starting

24 point and . . . initial benchmark" for this Court's consideration of

25 an appropriate sentence.  Molina-Martinez v. United States, 136 S.Ct.

26 1338, 1345 (2016) (quoting Gall v. United States, 552 U.S. 38, 49

27 (2007)).  Although the Guidelines are not binding, they "reflect a

28

1 rough approximation of sentences that might achieve section 3553(a)'s

2 objectives." United States v. Rita, 551 U.S. 338, 350 (2007).

3     Under 18 U.S.C. § 3553(a), in arriving at the appropriate

4 sentence, the Court should consider, among other factors, the nature

5 and circumstances of the offense and the history and characteristics

6 of the defendant, § 3553(a)(1); the need for the sentence imposed to

7 reflect the seriousness of the offense, to promote respect for the

8 law, and to provide just punishment for the offense, § 3553(a)(2)(A);

9 the need for the sentence imposed to afford adequate deterrence to

10 criminal conduct, § 3553(a)(2)(B); the need for the sentence imposed

11 to protect the public from further crimes of the defendant,

12 § 3553(a)(2)(C); and the need to avoid unwarranted sentence

13 disparities, § 3553(a)(6).

14 **VI.   GOVERNMENT'S SENTENCING RECOMMENDATION**

15     **A.   Term of Custody**

16     In light of the relevant 18 U.S.C. § 3553(a) factors, a sentence

17 within the advisory Guidelines range of 65 to 75 months' imprisonment

18 is sufficient, but not greater than necessary, to achieve the goals

19 of sentencing in this case.

20          1.   Nature and Circumstances of the Offense and History
               and Characteristics of the Defendant (18 U.S.C.
21             § 3553(a)(1))

22     Defendant's involvement in the fraudulent scheme to submit

23 fraudulent PPP and EIDL loan applications was integral and extensive.

24 Defendant used or facilitated the use of multiple identities,

25 including the synthetic identities "Anton Kudiumov" and "Viktoria

26 Kauichko," in the submission of twenty fraudulent PPP and EIDL loan

27 applications.  The applications were in the names of a variety of

28

1   purported businesses, many of which were fictitious or did not have

2   actual operations as reflected in the fraudulent applications.  The

3   same purported businesses were used multiple times to submit

4   fraudulent applications, both to institutional lenders and the SBA.

5      Defendant leased the Canoga Avenue apartment that was used as

6   the supposed associated address for purported applicants for a number

7   of these fraudulent loan applications.  Defendant coordinated with

8   codefendant Richard Ayvazyan in controlling the Canoga Avenue

9   apartment for this illicit purpose.  Defendant's leasing and control

10   of the Canoga Avenue apartment further enabled the overall fraudulent

11   scheme.  By adding the Kauichko synthetic identity to the lease,

12   defendant provided fuel to the fiction that Kauichko was a real

13   person that could legitimately apply for PPP/EIDL loans, in the same

14   vein that defendant used the Canoga Avenue apartment as the purported

15   address of "Anton Kudiumov" for loan applications submitted in the

16   name of that synthetic identity.

17      In addition to the fraudulent loan applications themselves,

18   defendant submitted or caused the submission of the three chief types

19   of fraudulent documents used to paper and perpetrate the scheme: fake

20   driver's licenses, fake IRS tax forms, and fake Gusto payroll

21   reports.  Defendant used all three of these fraudulent devices in the

22   Redline Auto Mechanics PPP application, making it more difficult for

23   the lender to detect the fraud.  Defendant used the stolen identity

24   of one victim (tax preparer A.F.) to lend further credence to the

25   appearance of the fabricated IRS tax form in this application.

26      Defendant's history and characteristics do not mitigate the

27   deliberate and calculated nature of his involvement in the fraudulent

28

1   scheme to warrant a variance below the advisory Guidelines range,

2   which defendant seeks in this case.[4]  By all accounts from the PSR,

3   defendant appears to have had a stable and supportive upbringing,

4   both prior to emigrating to the United States and since arriving here

5   and being naturalized as a citizen in 2012.  While defendant provided

6   background information to the USPO about certain substance abuse

7   issues,[5] any such issues do not excuse nor explain defendant's

8   engaging in a sophisticated and elaborate fraudulent scheme over the

9   course of approximately five months.  Defendant's involvement in the

10  scheme was intentional and prolonged and not on account of a

11  momentary lapse of judgment.  Moreover, defendant's lack of prior

12  criminal convictions is reflected in his Criminal History Category I

13  and the resulting advisory Guidelines range.[6]

14      In sum, the nature and circumstances of defendant's offenses of

15  conviction and relevant conduct typified the hallmarks of the fraud

16  at the heart of the PPP/EIDL scheme and the coordination that was

17  necessary to execute the extensive and sophisticated scheme.

18  Defendant's history and characteristics do not warrant a sentence

19  below the advisory Guidelines range.

20

21

22

23  _____

    [4] Defendant seeks a custodial sentence of 40 months in prison.
24  (See ECF 1054.)

    [5] These issues are reflected in the publicly-filed modification
25  of the conditions of defendant's pretrial release as well as
    defendant's sentencing position.  (See ECF 873, 1054.)
26
    [6] Defendant had two prior state arrests in 2016 (including one
27  for identity theft) that were not prosecuted for lack of sufficient
    evidence.  Defendant also has a pending state court case for identity
28  theft and possession of a controlled substance.  (PSR ¶¶ 67-69.)

2.   <u>Seriousness of the Offense, Respect for the Law, and</u>
<u>Just Punishment (18 U.S.C. § 3553(a)(2)(A))</u>

A custodial sentence within the advisory Guidelines range is also needed in this case to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

As described further in sections III and VI.A.1 above, the scope and execution of defendant's offenses of conviction and relevant conduct make plain the seriousness of the offense.  The context in which the fraudulent scheme was carried out only underscores the gravity of the offenses.  Defendant and his co-schemers sought critical COVID-19 disaster relief funds as the pandemic paralyzed the economy in the spring and summer of 2020.  While businesses and their employees were trying to make ends meet, defendant turned his attention to exploiting the national emergency.  The use of multiple synthetic or misappropriated identities, sham business entities, and fraudulent back-up documentation sought to deceive institutional lenders and the SBA as they worked to meet the vital needs of legitimate businesses.  Defendant's and his co-schemers' conduct was as brazen as it was callous, causing the submission of multiple fraudulent loan applications in the names of the same purported companies to the victim lenders and SBA.  The intricacies and coordination of the scheme which defendant and his codefendants carried out against the backdrop of an unprecedented public health and economic crisis reflect a significant lack of respect for the law and the need for just punishment in this case.

10

1    Based on the fraudulent conduct for which the parties agree

2  defendant should be held accountable, defendant and his codefendants

3  caused the submission of 20 fraudulent loan applications seeking

4  $3,405,282 in fraudulent loan proceeds.  The corresponding 16

5  additional levels under the loss table and the 2 additional levels

6  for sophisticated means appropriately capture the nature and scope of

7  defendant's fraudulent conduct.  See U.S.S.G. § 2B1.1 cmt. backgr.

8  ("[O]rdinarily, the sentences of defendants convicted of federal

9  offenses should reflect the nature and magnitude of the loss caused

10  or intended by their crimes.  Accordingly, along with other relevant

11  factors under the guidelines, loss serves as a measure of the

12  seriousness of the offense and the defendant's relative culpability

13  and is a principal factor in determining the offense level under this

14  guideline.")  The reduction of three levels for defendant's

15  acceptance of responsibility also adequately accounts for defendant's

16  willingness to be held responsible for his conduct.  And the

17  inclusion of the 24-month mandatory term of imprisonment in the

18  effective Guidelines range based on defendant's aggravated identity

19  theft conviction appropriately accounts for the seriousness of that

20  offense.

21    The resulting advisory Guidelines range of 65 to 75 months'

22  imprisonment is the proper measure of the seriousness of defendant's

23  offense conduct, and a sentence within that range is sufficient, but

24  not greater than necessary to strike the right balance of achieving

25  the goals of sentencing in this case.

26

27

28

3.   Affording Adequate Deterrence and Protecting the
     Public from Further Crimes of the Defendant (18 U.S.C.
     § 3553(a)(2)(B) and (C))

A Guidelines sentence in this case would also serve as an effective deterrent, both as to defendant and others in society more broadly.

With respect to specific deterrence, defendant acted with volition and intent in engaging in the fraudulent scheme over the course of a number of months and at the height of the pandemic, with the backdrop of the unfolding economic disaster.  The fraudulent scheme was sophisticated and designed to deceive numerous victims, including the federal government, and to evade law enforcement detection.  Defendant needs to be deterred from engaging in the same criminal calculus after he serves a term of custody in this case.

The government also notes several additional factors for the Court's consideration.  While defendant has been on pretrial release in this case, the USPO has filed two Pretrial Violation Reports.  The first alleged that defendant had not disclosed certain information to Pretrial Services following his arrest that he later provided to the USPO, ultimately leading to additional conditions of pretrial release.  (See ECF 871, 873.)  The second alleged separate issues relating to a trip defendant took in or around August 2021, with a recommendation to the Court that no action be taken at that time.  (See ECF 962.)  To the extent these issues reflect on defendant's appreciation of the magnitude of the instant proceedings and his underlying criminal conduct, a Guidelines sentence is necessary to impress upon defendant the consequences of his choices.

12

1    The sentence here should also deter others from similarly

2 exploiting the ongoing pandemic or a future national economic crisis

3 where federally-backed resources are made available for those who

4 need them most.  Similar to the need to promote respect for the law,

5 a sentence within the Guidelines range in a case such as this will

6 signal to other potential wrongdoers that they will be held

7 accountable for taking advantage of national emergencies.

8    With these factors in mind, the government respectfully submits

9 that defendant should receive a custodial sentence within the

10 advisory Guidelines range and not receive a variance below the

11 Guidelines.  Such a custodial sentence is sufficient, but not greater

12 than necessary, to achieve the goals of sentencing in this case.

13    **B.    Supervised Release**

14    The government concurs with the USPO's recommended term of four

15 years of supervised release following defendant's release from

16 prison.  The government recommends one additional special condition

17 of supervised release in light of defendant's underlying financial

18 crimes and fraudulent conduct.  Specifically, the government

19 recommends that defendant shall be prohibited from engaging in any

20 financial transaction in an amount of $10,000 or greater unless he

21 obtains prior approval from the USPO.  This condition was imposed as

22 one of defendant's pretrial release conditions in this case (ECF

23 191), and, in light of the alleged conduct described in the Pretrial

24 Violation Report filed with the Court on September 13, 2021 (ECF

25 962), the government believes this condition should be reimposed when

26 defendant commences supervised release following incarceration.  This

27 condition is aimed at protecting the public from further financial

28

1    crimes of defendant, which is reasonably related to the sentencing

2    factors described more fully above.  U.S.S.G. § 5D1.3(b).

3        **C.    Restitution, Fine, and Mandatory Special Assessment**

4        The government explained in its response to the PSR that the

5    actual loss amount calculated in the PSR undercounted restitution by

6    a net $75,000, omitting $79,000 in EIDL advance payments disbursed by

7    the SBA and overcounting one fraudulent EIDL loan by $4,000.  (See

8    ECF 1036 at 2-4, 9.)  In its further review of the underlying loan

9    documentation, the government has identified one additional EIDL

10   advance payment that was undercounted by $2,000 (for the Redline Auto

11   Mechanics EIDL loan) and a $5,000 EIDL advance payment that was

12   omitted (for the G&A Diamonds EIDL loan).  The government has updated

13   the loan chart to account for these omissions and attached it to this

14   memorandum as Appendix A.[7]  Accounting for this additional $82,000,

15   the government submits that the restitution amount owed in this case

16   as to defendant should be calculated as $2,684,798, not $2,602,798.[8]

17       The government takes no position on the imposition of a fine,

18   including the USPO's recommendation that the Court waive a fine in

19   this case.

20       Finally, the government concurs with the USPO's recommendation

21   that defendant pay the $200 mandatory special assessment.

22   **VII.  CONCLUSION**

23       For the reasons set forth above, the government respectfully

24   requests that defendant be sentenced as follows: (1) a custodial

25   ———————————————————

26       [7] The government provided a copy of the updated loan and loss
     chart to defendant and the USPO.

27       [8] For the same reasons, the amount of restitution to be ordered
     as payable to the SBA should be adjusted to $1,480,000 instead of

28   $1,398,000.

1    sentence within the effective advisory Guidelines range of 65 to 75

2    months' imprisonment; (2) a four-year period of supervised release to

3    follow; (3) restitution of $2,684,798; (4) a fine, if any, to be

4    determined by the Court; and (5) a mandatory special assessment of

5    $200.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**APPENDIX A**

2

| Company | Applicant | Amount | Lender | Status | Advance |
|---|---|---|---|---|---|
| Fadehaus Barbershop | Anton Kudiumov | $150,000 | SBA | Disbursed | $10,000 |
| Fadehaus Barbershop | Anton Kudiumov | $182,637 | WebBank | Cancelled | |
| Nelson's Nursery | Anton Kudiumov | $49,000 | SBA | Disbursed | $7,000 |
| Redline Auto Mechanics | Anton Kudiumov | $150,000 | SBA | Disbursed | $9,000 |
| Redline Auto Mechanics Inc. | Anton Kudiumov | $276,600 | Celtic Bank | Disbursed | |
| TM Events Inc. | Anton Kudiumov | $276,600 | Newtek | Disbursed | |
| TM Events Inc. | Anton Kudiumov | $150,000 | SBA | Disbursed | $7,000 |
| Manukyan Construction | Anna Manukyan | $131,195 | Cross River Bank | Disbursed | |
| Manukyan Construction | Anna Manukyan | $131,195 | Celtic Bank | Cancelled | |
| G&A Diamonds | Artashes Grigoryan | $145,000 | SBA | Disbursed | $5,000 |
| G&A Diamonds | Artashes Grigoryan | $113,750 | Cross River Bank | Disbursed | |
| Apex Health and Safety Consultants | Anna Manukyan | $150,000 | SBA | Disbursed | $10,000 |
| Greenshop Hydro Inc | Anna Manukyan | $150,000 | SBA | Disbursed | $10,000 |
| Manukyan Construction | Anna Manukyan | $150,000 | SBA | Disbursed | $10,000 |
| Runyan Tax Service, Inc | Viktoria Kauichko | $276,653 | Seattle Bank | Disbursed | |
| Journeymen Construction | Viktoria Kauichko | $150,000 | SBA | Disbursed | $8,000 |
| Fiber One Media, Inc. | Viktoria Kauichko | $150,000 | SBA | Disbursed | $10,000 |
| Fiber One Media, Inc. | Viktoria Kauichko | $276,652 | WebBank | Cancelled | |
| Fiber One Media, Inc. | Viktoria Kauichko | $130,000 | Celtic Bank | Cancelled | |
| Fiber One Media, Inc. | Viktoria Kauichko | $130,000 | Ready Capital | Disbursed | |

3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28

16